### R. M. ANDERSON v. THE STATE.

No. 2412. Decided November 6, 1901.

**1.—Manslaughter—Adequate Cause—Grouping Facts—Charge.**

On a trial for murder, where the facts presenting the issue of a nonstatutory adequate cause as to manslaughter may consist of a number of circumstances, it would often be difficult, if not impossible, to properly group and present them in the charge; and in such a case a charge on manslaughter submitting the issue as to adequate cause in general terms is sufficient. Following Carson v. State, ante, 265.

**2.—Same—Joint Defendants—Self-Defense—Charge.**

On a trial of father and son, who were joint defendants, for murder, where it appeared that both parties engaged in shooting deceased, who was unarmed, one or two of the shots being fired into deceased by each defendant after he had fallen to the ground, and the court charged the jury that if either of the defendants shot deceased while he was on the ground when neither of them were in danger, and such shot was fatal and caused his death, then they would not be justified on the ground of self-defense. Held, that though the fatal shot at deceased when upon the ground may have been fired by defendant's son, yet if defendant began shooting at deceased without justification, the difficulty being a continuous one, with intent to kill, he, the defendant, would be responsible

for all that his son did in assisting him in his unlawful enterprise, though his son may not himself have been guilty in the same degree as defendant or not guilty at all. The charge of the court was correct.

Appeal from the District Court of Marion, on a change of venue from Harrison County. Tried below before Hon. P. A. Turner, Special Judge.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant, R. M. Anderson, and Cain Anderson, his son, jointly with the murder of C. E. Rishell, on the 25th day of June, 1900, by shooting him with a pistol. They were jointly tried and Cain Anderson was convicted of manslaughter, with penalty assessed at two years imprisonment in the penitentiary, and he declined to prosecute his appeal and withdrew it.

The opinion states the case.

*Scott & Jones, W. H. Pope,* and *L. S. Schluter,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary, and he prosecutes this appeal.

There are no bills of exception contained in the record, except those in the motion for new trial, which relate to the charge of the court. The homicide occurred in Marshall, Harrison County, on the 25th of June, 1900. A change of venue was had to Marion County. Deceased, C. E. Rishell, lived in the house adjoining the home of Cain Anderson; the house occupied by deceased being the property of R. M. Anderson, the father of Cain Anderson, which had been rented to him by appellant and his son, Cain. Deceased was in arrears for rent, and appellant had been dunning him for the same. Deceased refused to pay the rents unless screens were put in the windows and doors, which he contended Cain Anderson had promised to have done when summer set in. In the forenoon of the day of the homicide deceased met appellant in town, and denounced him very violently in regard to this matter, and refused to pay appellant the rents until the screens were put in the openings of the house. About 12 o'clock appellant went to his son Cain's house. About the same time deceased went home to dinner, and, as stated by his wife, started in at his front gate, when defendant, R. M. Anderson, who was standing in the yard of Cain Anderson, about fifty feet distant from appellant's house, called to deceased: "Cain is here now. Come here and tell him what you said this morning." Deceased walked back through his gate, went down the sidewalk to the front gate of Cain Anderson's house, his wife following along after him. They stopped in front of the gate, and appellant called to his son, "Come out here." Cain came out

on the front steps of the house, which was about twelve feet from the gate, whereupon appellant said, "Did you promise Rishell, when you rented him the house, to have screen doors and windows put in it?" Cain answered, "No." Then deceased said, "Cain, did you not tell my wife, when you rented her the house, that you would have screen doors and windows put in?" to which he again replied, "No." Then deceased said, "You are a liar," and R. M. Anderson said, "Go for him, Cain." At this juncture Cain's wife came out, and grabbed him, and pulled him off the steps onto the gallery, and into the west room of their house. Appellant still stood there, and he and deceased had a wordy altercation. Deceased, with his wife, started to leave two or three times, and, on something being said by appellant, he would go back to the gate. On something being said by appellant to deceased about his wife taking him out of a saloon, deceased said, "Do you mean to insinuate on my wife's character?" and started into the yard, whereupon appellant drew his pistol, and deceased then held out both hands, and said, "I am unarmed, and have not got a weapon of any kind, but will fight you both, if you will come out of the yard into the street, a hand to hand fight." At this juncture deceased's wife rushed into the gate, grabbed hold of appellant, pushed him back to the steps, and up the steps into the west room of Cain Anderson's house. This house had three rooms, the house fronting south, with a gallery along the east room, and joining on to the west room, the end of the west room being toward the south. They scuffled in there a short time, and deceased presently came on the gallery, following his wife and appellant, and about the time he got to the door, according to some of the witnesses, and according to others after he got inside the door of the west room, appellant began shooting at deceased. After he had fired one or two shots, Cain Anderson came through the north room into the west room, grabbed a pistol off a table or organ in the room, and began firing on deceased. Deceased retreated from the door, the parties pursuing him, still firing on him, went down the steps in a stooping position, and fell at the foot of the steps, face foremost, his head extending toward the gate. One or two shots were fired at deceased after he fell. He received five shots, two or three of which were mortal, and death followed immediately. Both parties were indicted and tried together, the trial resulting in the conviction of Cain Anderson for manslaughter, and of R. M. Anderson for murder in the second degree. Both appealed, but the former has withdrawn his appeal, and the case against R. M. Anderson only is before us.

. Appellant contends that the court should have given a different charge on manslaughter; that is, the charge of the court should have grouped the facts constituting adequate cause, and should have presented the issue in that shape to the jury. In Warthan v. State, 41 Texas Criminal Reports, 385, it was held that, where the sole cause to reduce the homicide to manslaughter was one of the adequate causes enumerated in the statute, a charge based on said adequate cause, stating it, should be given. But we have never extended the doctrine to a case where the adequate

cause insisted on was not one of those enumerated in the statute. And in Carson v. State, ante, p. 265, we refused to extend the rule beyond that laid down in the Warthan case. While adequate cause, in a sense, is a matter of law, and the court must always first determine, before giving a charge on manslaughter, that the proof presents the issue of adequate cause, yet, where the facts presenting this issue may consist of a number of circumstances, it would often be difficult, if not impossible, to properly group and present them in a charge, and in such case a charge on manslaughter, submitting the issue as to adequate cause in general terms, would be sufficient. It may be, in this particular case, that the court could have grouped the facts, and so have presented the issue. But we hold this was not necessary. The jury, under the general charge, which was very full, would find no difficulty in applying the rule given to the issue as presented to the facts proven.

Appellant strenuously contends that the charge of the court on murder and manslaughter links the guilt of appellant with that of his codefendant, Cain Anderson, in such measure as to hold him responsible for whatever Cain Anderson did, regardless of whether or not appellant participated with him in his act and intent. We are particularly referred in this connection to paragraphs 37 and 38 of the charge. Paragraph 37 of the charge exonerates both appellant and his son, Cain, in case either justifiably fired the shot that killed deceased, either in the house or on the gallery, although one or both of them may have shot him unjustifiably after he had fallen off the gallery and onto the ground. And so we do not see how this charge can be complained of. Paragraph 38, however, instructs the jury that, if R. M. and Cain Anderson, or either of them, shot deceased while he was on the ground, when neither of them were in any danger of receiving any injury from deceased, and such shot was fatal, and caused his death, and that he had not received a shot or wound before this that would have caused his death, then they would not be justified on the ground of self-defense. This charge evidently binds appellant to his son, Cain, with hooks of steel, although Cain may have fired the fatal shot while deceased was on the ground, and the same was not necessary in his (Cain's) self-defense. Now, if there be a theory of the case arising out of the evidence in which Cain fired the shot while deceased was on the ground, and that was the fatal shot, and appellant did not participate with Cain in his act and in his intent, then evidently the charge of the court was calculated to prejudice appellant; but, if the fatal shot was fired before deceased was on the ground, this charge would not prejudice him. Neither could it prejudice him if appellant fired that shot, nor would it prejudice him if Cain fired the shot, and the proof was uncontroverted that appellant was cooperating with him in the act and participating with him in his intent. This is not like the case of Rhodes v. State, 39 Texas Criminal Reports, 332. There appellant was absent from the difficulty at the time the fatal shot was fired, and did not participate therein as a principal. Here appellant was present from the beginning of the difficulty, and while his

son, Cain, might not be held responsible for what occurred at the origin of the difficulty in the room, and before he (Cain) came into the room, the same rule could not be applied to appellant. If he was wrong in the beginning, and began shooting at deceased without justification, the difficulty being a continuous one, and the engaging in it to the end, having the intent to kill, and manifesting it throughout the difficulty, would be responsible for all that another did assisting him in the unlawful enterprise, though that other may not himself have been guilty in the same degree as himself, or not guilty at all. Nor is the case of Wilson v. State (Texas Criminal Appeals), 24 Southwestern Reporter, 409, in point. There appellant assaulted deceased with a rock, not necessarily a deadly weapon, while his brother, without his knowledge, stabbed deceased with a knife. Of course, if here appellant began the difficulty, making a simple assault or an aggravated assault, not intending to kill deceased, and his brother came upon the scene with a deadly weapon, intending to kill deceased, appellant would not be liable, unless he knew his intent and participated in it (see this question discussed in Mitchell v. State, 36 Texas Criminal Reports, 310, 311) ; the rule being, as stated by Mr. Bishop, that "one is responsible for what of wrong flows directly from his corrupt intentions; or, if he sets in motion the physical power of another, he is responsible for its result, and, if he contemplate the result, he is answerable, though it is produced in a manner he did not contemplate." Bish. New Crim. Law, sec. 537, subdiv. 5. Now, in the light of the facts in this case, it is indisputably shown that deceased received a shot through the heart before he fell on the ground. This unquestionably was a fatal shot; and that he received another shot through the heart subsequently would make no difference. Moreover, the testimony of all the eyewitnesses shows that appellant fired on the deceased after he was on the ground, and in that event the charge would not prejudice him. This is not a case where this appellant entered into a conflict that some one else had brought on. On the contrary, it is a case where appellant engaged in the conflict at the beginning. That he had a deadly purpose there can be no question; and the testimony shows he entertained this deadly purpose to the end of the conflict, and it would not relieve him of responsibility that some one else came into the conflict afterwards and aided him in his deadly purpose. It may be conceded, so far as appellant's legal rights are concerned, that appellant's shot missed deceased, and the fatal shot was fired by Cain Anderson, as the evidence, to our minds, is uncontroverted that appellant, having a deadly intent throughout the conflict, participated in whatever deadly intent his son, Cain, may have had after he came upon the scene.

The court did not charge on the law of conspiracy, but simply on the law of principals; and, as he did not charge on conspiracy as against appellant, it was not necessary for him to have given a counter charge on that subject in his favor. The court gave a very full and fair charge on self-defense. If he had not done so, the case would be reversed. But

upon that issue the jury found against appellant, and, there being evidence to support their finding, we do not feel authorized to reverse the case.

There being no error in the record, the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.

[Note.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]